ROBERT WHITE v. BRAINERD SERVICE MOTOR COMPANY.[1]

October 17, 1930.

No. 28,061.

[1]Reported in 232 N. W. 626.

*L. K. Eaton* and *Fisher, Cashin & Reinholdt,* for appellant.
*Ryan & Ryan,* for respondent.

HOLT, J.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Defendant, a corporation, owns, uses, and operates motor vehicles, its place of business being at Brainerd, Minnesota. Robert Anderson was in its employ and was sent to Minneapolis in the afternoon of December 1, 1928, to get a LaSalle convertible coupé, owned by defendant, and drive it to Brainerd. He was also directed to go to a theater in Minneapolis for some tickets ordered by his employer. Anderson obtained the car, but instead of getting the tickets and leaving directly for his destination the car was driven in another direction a couple of miles to the vicinity of the University. Here plaintiff and Raymond Anderson, whose homes were near that of Robert Anderson at Brainerd, were met, and the latter invited them and another student to ride with him to Brainerd. The invitation was accepted, but before going for the theater tickets the young men procured a pint of "cut whisky," then went for the tickets and started for Brainerd about 7:30 p. m. They stopped just outside Robbinsdale, Anoka, and Elk River for a drink each out of the whisky bottle. The last stop emptied the bottle. They arrived at St. Cloud about 9:30, crossed the river to the home of Robert Anderson's sister, and resumed their journey to Brainerd about 10 o'clock. Leaving St. Cloud, plaintiff sat with the driver and the other two in the rumble seat with the curtain between open. They had procured a small bottle filled with ginger ale and alcohol in St. Cloud, and after leaving the city limits each had a drink therefrom except

plaintiff. A short distance beyond Sartell the driver speeded up the car to about 60 miles an hour. It was raining or sleeting at the time. As he so speeded up, the evidence tends to show that the wheels on the right ran off the pavement, which was there two or three inches higher than the shoulder, and going at that high speed it may be inferred that when the driver tried to bring the car back onto the pavement the wheels caught on the edge thereof and it shot right across the road before the driver could right the steering wheel and crashed through the safety cable and posts protecting the left side of the road, throwing the three passengers out, severely injuring plaintiff. Plaintiff was a minor, 19 years old. His father also sued to recover the amounts expended for surgical and hospital treatment. The two cases were tried together, and verdicts for substantial sums were rendered. It is only necessary to consider the minor's case.

The assignments of error are numerous, but since the court has come to the conclusion that there should be judgment notwithstanding the verdict it will not be necessary to consider any error except the one refusing to order judgment. We have no hesitancy in saying that the negligence of the driver was for the jury, and we think its finding that plaintiff was not guilty of contributory negligence might be sustained; but the obstacle to a recovery is that the record does not establish any authority in the driver to invite plaintiff or anyone to ride in the car. Hence the young men when they entered the car were trespassers or mere licensees so far as defendant was concerned. The defendant's manager was called by plaintiff for cross-examination and testified that Robert Anderson was in defendant's employ, that he sent him to get the car, that he had driven cars for defendant before between Brainerd and other places, and then this question was put to him:

"You said nothing to him concerning riding anybody else with him?

A. "No, sir, I did not."

He also testified that he gave no direction in detail as to how he should handle the car nor said anything else to him except that of

getting the theater tickets. Defendant did not introduce any testimony, nor was its manager asked any question by defendant's attorney when on the stand. The burden was on plaintiff to show that his injury was caused by Robert Anderson's negligence and that defendant was responsible therefor.

Unquestionably in driving the car at the time and place of the accident Robert Anderson was within the scope of his employment, so that to anyone injured in his person or property by being struck by it when, through negligence of the driver, it careened across the pavement defendant would have been liable.

"The prevailing view is that it is reasonable to presume that a person driving another's vehicle on a public highway is doing so as the agent of the owner in the pursuit of the owner's business and within the scope of his employment." Ahlberg v. Griggs, 158 Minn. 11, 13, 196 N. W. 652, 653; Adams v. Nathanson, 161 Minn. 433, 201 N. W. 927.

But while it is reasonable that this presumption applied in favor of those damaged by being struck by a vehicle driven by the servant of the owner, it does not necessarily follow that it should apply in favor of one who accepts the servant's invitation to ride in an automobile. If the servant extends the invitation, it cannot well be presumed that the ride is in furtherance of the master's business or interests but rather that it is for the servant's personal pleasure or interest and that of the one invited. Furthermore, the presumption or inference that the servant operating a car is within the scope of the employment as to those struck by the negligent driving thereof is one of fact and not of law. Piepho v. Sigbert-Awes Co. 152 Minn. 315, 188 N. W. 998.

In the instant case it was not left to the jury, the court instructing thus:

"It appears in this case without dispute that the employe or driver of the car at the time the accident happened was in the employ of the defendant and that he was then performing a duty that he owed to his employer in bringing a car from Minneapolis to Brainerd, and I charge you in that respect that if under the evidence in

this case the driver of the car was negligent, and if that negligence was the proximate cause of the injury, then the defendant in this case, the employer, would be liable to the injured person the same as though the employer had himself been operating the car."

The instruction is erroneous according to the decision in the case last cited. This would necessitate a new trial, for exception was taken and error assigned thereon. But the court is of the opinion that the evidence does not warrant a recovery, and hence the court erred in not directing a verdict and in not granting judgment non obstante.

Plaintiff relies on the circumstances that in cases where courts have denied recovery to persons injured while riding on trucks the fact has been stressed that trucks were not made to carry passengers, and hence the inference is not permissible that the owners thereof authorized the servant to invite anyone to ride thereon. And therefore it is contended that, since this was an automobile made to carry persons, the presumption should obtain that the servant intrusted with such a vehicle has ostensible or implied authority to invite others to ride. Cases are cited where trucks were involved. O'Leary v. Fash, 245 Mass. 123, 140 N. E. 282; Monnet v. Ullman, 129 Or. 44, 276 P. 244; Gruber v. Cater Transfer Co. 96 Wash. 544, 165 P. 491, L. R. A. 1917F, 422. There is no good reason apparent to us for holding that a jury may be allowed to infer that a servant or chauffeur driving an automobile has ostensible or implied authority to invite or permit others to ride. It is not in the interest of the ordinary automobile owner to give free rides to others and incur the risk incident to so doing. In this day of streets and highways overrun with motor vehicles operated so often at high and reckless speed, every owner of an automobile incurs a heavy risk when the car leaves the garage and should not lightly be held to have authorized his servant or chauffeur to invite passengers for whose safety he as owner must also vouch.

Here was no attempt to prove authority. This record repels the inference that these young men had any ground for the belief that Robert Anderson had either express or implied authority to invite

them to take this long trip to Brainerd. They do not claim that they understood defendant to be in the transportation business or that they were to pay for being carried. They were too intelligent to think that defendant, the owner of a valuable and powerful car, would consent to carry persons who were provided with intoxicating liquor, to be drunk by the driver and occupants of the car, thus risking not only damage to the car but subjecting its owner to heavy loss should others be run into due to the driver's condition. By carrying liquor in the car they also must have known that the car was exposed to the risk of confiscation. Nor could they think that the driver had apparent authority to give them a 150-mile ride to further no interest of the owner. It is obvious that the interests to be served by the ride of these three men were only those of themselves and the driver. And so far as defendant was concerned, Robert Anderson's permitting their presence in the car was a clear departure from the scope of his special mission. To the argument advanced by plaintiff that defendant is liable even though it had not consented to plaintiff's being carried because the driver occupied a dual position, being the host to plaintiff and at the same time the agent of defendant engaged in driving the car pursuant to orders, we quote the answer the court gave in Dearborn v. Fuller, 79 N. H. 217, 107 A. 607. There Freeman, the driver and servant of the defendant, was directed to drive the defendant's car from Boston to Manchester, and the servant invited Wallace, the plaintiff's intestate, to ride with him. The court said [79 N. H. 218]:

"In all that Freeman did touching the carriage of Wallace he acted outside the authority conferred upon him. From first to last it was his own undertaking and not that of the defendant.

"But it is said that, conceding this to be so, Freeman occupied a dual position. Personally, he was the host of Wallace, who rode as his guest, and as agent of the defendant he was engaged in driving the car from Boston to Manchester. Hence it is said, the defendant, through Freeman, knew of Wallace's presence and was bound to act reasonably towards him in the operation of the car. The defect in this reasoning is that when the agent acts in this dual

way knowledge on his part is not chargeable to his principal. Brookhouse v. Company, 73 N. H. 368 [62 A. 219, 2 L.R.A.(N.S.) 993, 111 A. S. R. 623, 6 Ann. Cas. 675]. The application of the rule charging the principal with his agent's knowledge 'is limited by the reasons that sustain it.' Clark v. Marshall, 62 N. H. 498. Those reasons are wholly lacking in the present case.   *   *   *

"Although driving the car also promoted the defendant's business, such promotion bore no relation to the carriage of Wallace. The transportation of Wallace in no way aided the defendant's work of taking the car to Manchester. It was not a reckless or careless method Freeman used to do his master's work, but a distinct undertaking of his own. If the dual character of Freeman's acts is to be considered at all it must be followed throughout the transaction. So far as he operated the car to carry Wallace, he did so as an individual. So far as Wallace was concerned it was Freeman, and not the defendant's agent, who drove the car.   *   *   *

"The suggestion that Freeman had apparent authority to extend the invitation to Wallace, on behalf of the defendant, and that Wallace acted on the strength of such appearances, is not borne out by any evidence.   *   *   *

"While it is true, as the plaintiff claims, that the extent of the authority conferred upon an agent may be a question of fact, yet the question whether there is any evidence to prove it is one of law.   *   *   *   If there had been testimony from which a finding of authority conferred could reasonably have been made, the case would have been for the jury; but it was error to permit them to find the fact without evidence."

So we think it was here. Other cases leading to the same result are: Powers v. Williamson, 189 Ala. 600, 66 So. 585; Morris v. Fruit Co. 32 Ga. App. 788, 124 S. E. 807; Paiewonsky v. Joffe, 101 N. J. L. 521, 129 A. 142, 40 A. L. R. 1335; D'Allesandro v. Bentivoglia, 285 Pa. 72, 131 A. 592; Wing v. Martin, 101 Vt. 108, 141 A. 602; McQueen v. Peoples Store Co. 97 Wash. 387, 166 P. 626. The only case we have found which would tend to support the recovery here is Royal Indemnity Co. v. Platt & Washburn Refining

Co. 98 Misc. 631, 163 N. Y. S. 197; but a later case in the New York Court of Appeals appears to us to state a sounder rule more applicable here, Rolfe v. Hewitt, 227 N. Y. 486, 491, 125 N. E. 804, 805, 14 A. L. R. 125, where it is said:

"When the owner of a private car sends his chauffeur on an errand, that does not give him authority to take into it a person casually met upon the highway."

We do not think that plaintiff is aided by "the family car" doctrine within the rule of Johnson v. Evans, 141 Minn. 356, 170 N. W. 220, 2 A. L. R. 891. This car was not used for the general purpose of carrying guests of defendant or of its servants. Nor do the facts permit a recovery on the theory that plaintiff was a trespasser or mere licensee upon the car as to defendant, where defendant would be responsible for wanton or wilful negligence of the driver causing plaintiff's injury.

The court deems there should be judgment non obstante. The writer is not of that view because not satisfied that there may not exist evidence that defendant allowed, permitted, or approved of Robert Anderson's giving rides when going on similar errands for it. It is only where the court is satisfied that no evidence is in existence to establish a cause of action that judgment non obstante veredicto should be ordered.

The order is reversed and the cause remanded with direction to enter judgment for defendant notwithstanding the verdict.