# JOSEPHINE LAUSCHE v. DENISON-HARDING CHEVROLET COMPANY AND OTHERS.[1]

No. 28,482.

February 19, 1932.

[1]Reported in 243 N. W. 52.

*Pegelow & Bargen, Sweet, Johnson & Sands,* and *Ingham, Mac-Phail, Blodgett & Kelly,* for appellant.

*Daniel DeLury,* for respondent.

STONE, J.

Action for personal injuries caused by an automobile collision. Plaintiff had a verdict against defendants Denison-Harding Chevrolet Company and Wilfred Aldrich, its employe. The other named defendant, Childs, was not served with the summons. The appeal is by Denison-Harding Chevrolet Company from the order denying its alternative motion for judgment or a new trial. It will be referred to hereafter as though it were the only defendant, its codefendant Aldrich not being party to the appeal.

The collision occurred soon after midnight on the morning of August 17, 1929, a few miles west of Cass Lake on the trunk highway between that village and Bemidji. The eastbound car, in which plaintiff was a passenger, was run into by one going in the opposite direction toward Bemidji. The latter was a Dodge coupé owned by defendant. At the time being it was in use by Aldrich,

an auto salesman in defendant's employ. He was permitted by defendant to take any of the latter's used cars from its Bemidji garage for use in defendant's business or for his own purposes. No restrictions were put upon the times or manner of their use. Plaintiff seeks recovery from defendant on the doctrine of respondeat superior, asserting that there is evidence to justify the conclusion reached by the jury that at the time of the collision the Dodge coupé was in use by Aldrich within the scope of his employment.

■ In that we cannot agree. Aldrich had no stated hours of service. He worked when and as he pleased in his efforts to sell cars. On the evening in question he left Bemidji for Cass Lake about 7:15. We assume that at the outset he intended to call on a "prospect" at Cass Lake. But he was accompanied by a close friend by the name of Childs, and they took with them from Bemidji a potent supply of moonshine liquor in which both indulged freely en route to Cass Lake. All thought of business, the evidence makes it quite clear, was abandoned before Cass Lake was reached. When they got there no effort was made to see the prospective purchaser or to attempt anything other than the satisfaction of their own desires for a good time. At Cass Lake, reached about eight o'clock, they attended a street carnival. Aldrich continued drinking and became definitely intoxicated. He and Childs, with the Dodge coupé, left Cass Lake for a public dance at a near-by summer resort, where they arrived at about 10 or 10:30 p. m. There Aldrich became boisterous and altogether unruly. A friend, by name McLaughlin, loaded Aldrich into the coupé, where he promptly fell asleep. On the suggestion of McLaughlin, who was to follow in another car, Childs undertook to drive the coupé back to Bemidji and was at its wheel at the time of the collision. Aldrich continued in his drunken stupor.

The jury found, properly enough, that Childs was driving with the consent of Aldrich. But there is no evidence to sustain its further conclusion that Aldrich was in the scope of his employment and on his master's business at the time. All we know about the destination of defendant's machine is that it was going to

Bemidji. There is nothing to show whether it was bound for defendant's garage or some other place, there to be left until Aldrich had sobered sufficiently to go back to work. He was not obliged to return the car to defendant's garage each night but was privileged to keep it at his own home, and frequently did so. Thus disappears the only possible ground for plaintiff's claim that because he was returning defendant's car to its place of business Aldrich was within the scope of his employment. The case is thereby distinguished from Cummings v. Republic Truck Co. 241 Mass. 292, 135 N. E. 134, where the negligent employe, after his departure from his employer's business, was held to have returned thereto because at the time of the accident he was returning the car via the ordinary and proper route to his master's garage.

Ordinarily the question whether at a given time a servant is on his master's business is one of fact. But that does not relieve us from the duty, in this case an unpleasant one, of deciding in the negative the legal question of the sufficiency of the evidence to sustain the affirmative of the issue. We have had to do that in many cases, e. g. Moore v. P. J. Downes Co. 150 Minn. 333, 185 N. W. 395, and Malmquist v. Hellenic Community, 163 Minn. 10, 203 N. W. 420. For other cases see 4 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 5840 and 5843. Even though Aldrich had a general and roving commission to seek customers for defendant (see Rudd v. Fox, 112 Minn. 477, 128 N. W. 675) still is it plain as matter of law that he was beyond even the scope of that employment on the occasion here determinative. It would strain controlling law beyond the breaking point to hold that the debauch in which Aldrich was indulging and during which the accident here in question occurred could in any reasonable view be considered within the scope of his employment by defendant. It was plainly not at all his master's business but wholly his own ill-fated affair.

It is "generally well settled" that the owner is not liable for damages caused by the negligent operation of his automobile while being used by an employe for the latter's business or pleasure and not in the master's business, even though the owner has consented to such use. Anno. 22 A. L. R. 1400. That is the rule in this state.

Mogle v. A. W. Scott Co. 144 Minn. 173, 174 N. W. 832; Menton v. L. Patterson Merc. Co. 145 Minn. 310, 176 N. W. 991.

No further discussion is needed to demonstrate the utter lack of foundation for the verdict against defendant. Of course the jury was not obliged to credit the testimony of Aldrich. But if we put it aside and with it all other testimony open to question on any ground, plaintiff will not be aided. Her case is thereby left void of evidence to sustain the burden of proof resting upon her.

A different result would be possible could we include automobiles in the category to which applies the doctrine of strict accountability known as the dangerous instrumentality rule. That view has not been adopted here (Provo v. Conrad, 130 Minn. 412, 153 N. W. 753; Menton v. L. Patterson Merc. Co. 145 Minn. 310, 176 N. W. 991) ; and the "decisions elsewhere are almost unanimously" against it. Anno. 16 A. L. R. 270. If injured persons in the unfortunate and deserving situation of this plaintiff, who has suffered painful and permanent injuries, are to recover from the owner of the offending automobile on the ground of ownership, and for no other reason, the law-making necessary for that result must come from the legislature rather than the courts.

The case was fully and well tried and has been exhaustively argued here. There is no reason for a new trial. Hence the order appealed from must be reversed with directions to enter judgment for defendant notwithstanding the verdict.

So ordered.

OLSEN, J. (dissenting).

The jury could reasonably find that when Aldrich started out on the trip he intended to go and was going on business for his employer; and when the accident happened he was on his way, on the proper route, to take the car back to his employer's place of business at Bemidji. It was his duty as part of his employment to so take the car back. The fact that while on the trip he for some time departed from the business of his employer and used the car for his own convenience or pleasure seems to me not controlling. Mulvehill v. Bates, 31 Minn. 364, 17 N. W. 959, 47 Am. R. 796;

Rudd v. Fox, 112 Minn. 477, 128 N. W. 675; Stoneman v. Washburn-Crosby Co. 153 Minn. 331, 190 N. W. 605; White v. Brainerd S. M. Co. 181 Minn. 366, 232 N. W. 626; Cummings v. Republic Truck Co. 241 Mass. 292, 135 N. E. 134; Riley v. Standard Oil Co. 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; Gibson v. Dupree, 26 Colo. App. 324, 144 P. 1133; Graham v. Henderson, 254 Pa. 137, 98 A. 870; Good v. Berrie, 123 Me. 266, 122 A. 630.

Where, as in the present case, the servant is given a roving commission to go where he pleases at any time of the day or night on the master's business, is furnished a car for that purpose, and in addition thereto is granted authority to use the car for his own business or pleasure, the rule that the master is not liable for the servant's negligence, unless it is clearly shown that the car was being used at the time in furtherance of the master's business, should not be too strictly applied. It may well be inferred that the use of the car by the servant for his own purposes was in part a compensation paid by the master for the services performed by the servant. It was a part of the contract of employment. It is not a very unreasonable deduction that such use was within the scope of the servant's employment. Of course the servant would have no authority to use the car for an illegal purpose or to himself drive it while intoxicated.

HOLT, J. (dissenting).

I concur in above dissent.

HILTON, J. (dissenting).

I concur in above dissent.

AFTER REARGUMENT.

On May 20, 1932, the following opinion was filed:

OLSEN, J.

After hearing rearguments in this case five members of the court are agreed that the order of the trial court herein appealed from should be affirmed. It follows that the opinion heretofore filed, so far as it reverses the order and directs the entry of judgment in

favor of the defendant company, should be and is vacated and set aside. The conclusions now reached by the majority are that the evidence sustains the verdict and that no reversible errors are shown.

■ That Aldrich, at the time of the accident, was an employe of his codefendant, Denison-Harding Chevrolet Company, hereinafter referred to as the company, and had permission and authority to use the car which caused plaintiff's injury, is not disputed. The decisive question is whether at the time and place of the accident he was within the scope of his employment. The fact that his friend Childs was driving the car at the time, with the consent of Aldrich and with Aldrich riding with him, does not change the situation. Kayser v. Van Nest, 125 Minn. 277, 146 N. W. 1091, 51 L.R.A. (N.S.) 970. More specifically, the question is whether the evidence is sufficient to justify the jury in finding that Aldrich was at the time within the scope of his employment, or, as sometimes stated, was carrying out some purpose of his employment in his master's business. In considering that question we are to apply the established rule that on an appeal of this kind we are to view and consider the evidence in the most favorable light for the plaintiff.

Mr. Harding, the president of the defendant company, testified in substance that Aldrich was employed by them as an automobile salesman; that his sales territory was Bemidji and surrounding country and towns, including Cass Lake; that it was his duty to look around and become acquainted with people in the territory and look for and find purchasers and prospective purchasers for cars; that he was to hustle around and find some one who might buy a car. He had what may be referred to as a roving commission. The company furnished him a car to use. There were no fixed hours of employment. He was sometimes directed to go to see some specific prospect; otherwise he could go and come as he saw fit, in the daytime or evening, and to any place within the territory. He had permission also to use the car for his own pleasure or business. When out on a trip, it was his duty to bring

the car back to the company's garage at Bemidji. If he came in later than nine o'clock in the evening, at which hour the garage closed, he could then keep the car at his home overnight and return it to the garage in the morning.

On the afternoon of the day of the accident Aldrich was at the garage and told Mr. Harding he was going to Cass Lake. Harding assumed he was going there on business for the company and said "all right." There is other evidence that Aldrich at that time looked for and obtained from the office files the name of a prospect at Cass Lake whom he intended to see. Aldrich and his friend Childs then, about seven o'clock that evening, drove to Cass Lake in the car furnished to Aldrich by the company. The accident happened on the trip back from Cass Lake to Bemidji late that evening. It happened on the proper route from Cass Lake to Bemidji.

From this evidence the jury could find that Aldrich went on this trip in furtherance of and in the course of his employer's business. The jury could and no doubt did disbelieve and disregard Aldrich's testimony that just after leaving Bemidji he had a sudden mental change of intention and then decided he would not do any business or attempt to see any prospect at Cass Lake. In fact the jury might well disbelieve any or all of his testimony except so far as corroborated. Under the terms of his employment, whether Aldrich went to Cass Lake to look up a particular prospect or whether he went there to meet and get acquainted with people and look for prospects generally, he would in either case be within the scope of his employment. We start out then with the proposition that the finding of the jury that Aldrich was within the scope of his employment in going to Cass Lake is sustained by the evidence. At what time or place, if at all, he thereafter departed from his employment is not clear. We believe it was a question for the jury. They could have found that he departed from his employment when, after leaving Cass Lake on the road back to Bemidji, he drove a short distance off that road to the summer resort where a dance was in progress. There is evidence that a few days before Aldrich and Childs had arranged between them to attend this dance. But

they did not go from Bemidji to the dance. They went to Cass Lake and spent a large part of the evening there. The evidence does not show that Aldrich looked for any prospect or did any business on the trip. We do not wish to minimize in any degree the misconduct of Aldrich in drinking liquor on the trip and at Cass Lake and the summer resort, so that he finally became so intoxicated that it was decided not to be safe for him to drive the car back from the summer resort to Bemidji. With Aldrich riding with him and with his consent, Childs then drove the car from the summer resort out onto the road to Bemidji and on that road towards Bemidji until the accident happened. It was Aldrich's duty as a part of his employment to bring the car back to Bemidji, and they were on the proper road and so doing at the time of the accident.

■ Proof of ownership and that the operator is an employe of the owner of an automobile driven on a public street or highway is held in some states to make a prima facie case against the owner for negligence of the operator. It is held to justify an inference that the car was being operated and used by authority and in the business or for the purposes of the owner. In the case of Ferris v. Sterling, 214 N. Y. 249, 253, 108 N. E. 406, 407, Ann. Cas. 1916D, 1161 (opinion by Justice Cardozo) the court said:

"The license number of the car, coupled with evidence that the defendant held the license, was prima facie proof that the defendant was the owner. It was more than that; it was prima facie proof that the custodian of the car was then engaged in the owner's service."

From Norris v. Kohler, 41 N. Y. 42, 44, there is quoted with approval this statement:

"The property being proved to belong to defendant * * * a presumption arises that it was in use for his benefit, and on his own account." See also Benn v. Forrest (C. C. A.) 213 F. 763; Ward v. Teller R. & I. Co. 60 Colo. 47, 153 P. 219; Gallagher v. Gunn, 16 Ga. App. 600, 85 S. E. 930; Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, Ann. Cas. 1918D, 1123; West v. Kern, 88 Or. 247, 171 P. 413, 1050, L. R. A. 1918D, 920.

The inferences to be drawn from the facts of ownership of the car and that it was used by defendant's servant or employe may of course be rebutted and overcome by other evidence. But unless conclusively so rebutted, the questions would seem questions of fact for the jury. Our own cases follow the rule. Ploetz v. Holt, 124 Minn. 169, 144 N. W. 745; Johnson v. Evans, 141 Minn. 356, 170 N. W. 220, 2 A. L. R. 891; Ahlberg v. Griggs, 158 Minn. 11, 196 N. W. 652; Adams v. Nathanson, 161 Minn. 433, 201 N. W. 927; White v. Brainerd S. M. Co. 181 Minn. 366, 232 N. W. 626. We cannot say that the inference so to be drawn was so conclusively overcome as to take the case from the jury.

■ It is undisputed that at the time of the accident the car was upon the proper road and was being driven back to Bemidji, to which place it was Aldrich's duty to return it. If, as the jury found, Aldrich went to Cass Lake on the business of his employer, and at the time of the accident was on his proper way to bring the car back to Bemidji, then he was at that time within the scope of his master's business, even if it be assumed that he had deviated from his employment by going out of his way to the summer resort.

In White v. Brainerd S. M. Co. 181 Minn. 366, 369, 232 N. W. 626, 627, where the servant had deviated from his course and employment but had, before the accident happened, returned to the proper road and route over which he was to drive the car back to his employer, this court said:

"Unquestionably in driving the car at the time and place of the accident Robert Anderson [the employe] was within the scope of his employment." See also Cummings v. Republic Truck Co. 241 Mass. 292, 135 N. E. 134; Riley v. Standard Oil Co. 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; Gibson v. Dupree, 26 Colo. App. 324, 144 P. 1133; Graham v. Henderson, 254 Pa. 137, 98 A. 870; Good v. Berrie, 123 Me. 266, 122 A. 630.

■ The verdict is claimed to be excessive. In view of the serious and permanent injuries to plaintiff, we cannot say that the verdict is excessive.

■ All assignments relating to errors in the trial have received careful consideration, and no reversible errors have been found. We do not deem it necessary to consider these assignments in detail.

In the opinion heretofore filed it is inadvertently stated that both Aldrich and Childs drank intoxicating liquor on the trip. There is no evidence that Childs drank any liquor. The evidence is to the contrary, and the statement as to Childs' drinking is withdrawn from that opinion.

The order of the district court here appealed from is affirmed.

WILSON, C. J. (dissenting).

The employer is liable for the result of an employe's negligence while the employe is acting in his business—when he is engaged in the course of his employment. A simple rule. Its application should not be difficult.

"Whatever the facts, the answer depends upon a consideration of what the servant was doing, and why, when, where and how he was doing it." Riley v. Standard Oil Co. 231 N. Y. 301, 304, 132 N. E. 97, 98, 22 A. L. R. 1382.

Aldrich testified that before he got out of the city of Bemidji he changed his mind, abandoned all business, and was thereafter on pleasure bent. The majority opinion holds that the record presents such inconsistent statements and conduct by Aldrich as to permit the jury to disbelieve his claim of abandoning his employer's business and in fact rejecting all his testimony unless corroborated. I rather concur in that. Yet his conduct conclusively shows that he did in fact abandon all business. It does not need his statements to establish that fact. The circumstances conclusively prove it. He never saw his prospect at Cass Lake. He never tried to see him. The prospect passed completely out of his mind. The opinion shows that the jury could find that Aldrich went to Cass Lake on his employer's business. If so, what business? No one can tell, unless it be said he was there to see the man that he did not look for. When the jury rejects his statement that he abandoned all business,

there is nothing left. He did not do anything in Cass Lake for his employer. He was there in the early part of his spree. Why the jury can be permitted upon such a record to say that Aldrich was in Cass Lake on his employer's business is beyond my grasp of legal rules and principles. He devoted himself to drinking. He left Cass Lake and went to Sah-kah-tay, where he had no business. It is apparently conceded that he was outside the line of duty while there. That was a resort, and he presumably went there for amusement and entertainment. He devoted himself to what he apparently considered pleasure. He became drunk. He "passed out." Childs alone should be held responsible for this accident. If he is financially irresponsible that is no different from many other irresponsible people who are permitted to drive cars upon our highways without carrying insurance.

Had Aldrich at the place where he began drinking turned west and an accident had happened when he was going to Crookston for pleasure, defendant would not have been liable. To my mind nonliability in the instant case is just as clear.

The majority opinion puts liability upon the claim that if Aldrich departed from the line of duty he resumed that relationship when the car was headed homeward from Sah-kah-tay, especially after he got back on the same road he would have traveled had he traveled back to Bemidji from the city of Cass Lake. This claim rests upon the statement that it was the duty of Aldrich to return the car to his employer. Of course it was. Having permissibly used the car for his own personal affairs, he was required to return the car to the owner; but to put liability upon such a duty arising out of the personal use of the car seems mythical or a fiction when it becomes the basis for liability on the part of an employer arising out of the negligent operation of the car while it is being so returned. Indeed, property rights hang on a slender thread. The right to use the car on personal trips was expressly given. This right carried the implied personal duty always to return the car, and this duty required that the car be returned all the way home. It is the law that when there has been a temporary abandonment by the employe of the employer's work the employer again becomes liable

for the employe's acts when the latter once more begins to act in the line of duty and in the scope of the employment. But in the instant case the employe was on the way home from a personal diversion, and the court holds that when he got back onto a highway which he would have traveled had he not gone on a personal diversion the relationship of master and servant was immediately resumed though the employe was then unfit for duty. It seems to me that this puts too much emphasis on the matter of road. It is also rather a forced statement to say that Aldrich was returning the car. He was so drunk that his friend McLaughlin caused Mr. Childs to drive the car—not to take it home to the employer but to take Aldrich home. In my judgment this was an errand personal to Aldrich and should not be classed as in the interests of the employer. The car did not have to be returned that night, and Aldrich was at liberty to keep and return the car the following day. The return of the car that night was purely an incident to the personal trip, as well as to getting Aldrich home. The return of the car was never mentioned to anyone. It was never thought of until someone began to look for a peg upon which to hang a verdict against the employer. The employer's garage was closed, and all that could be done with the car that night was to take it to Aldrich's home. There was no thought of doing more.

When there has been a temporary abandonment of the employer's service the employer again becomes liable for the employe's acts when the latter once more begins to act in his business. Riley v. Standard Oil Co. 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382. It seems to me that the record shows that Aldrich was doing an independent act of his own and was as a matter of law outside the service for which he was employed. I think it should be said that he was solely on his personal escapade until he returned to his home in Bemidji, that is, until he reported for duty.

I suggest that the rules of the return of the car and of getting back on a road that would have been used in the absence of the diversion are not sound. Both are related to questions so important under modern conditions that they ought to be solved in a manner that will aid in the wholesome administration of justice.

STONE, J. (dissenting).

While agreeing in the opinion of the Chief Justice, I am entirely sympathetic—no one can be otherwise—with the idea that plaintiff should have damages. But in my view the refusal of this court (Provo v. Conrad, 130 Minn. 412, 153 N. W. 753; Menton v. L. Patterson Merc. Co. 145 Minn. 310, 176 N. W. 991) to put automobiles under the rule of liability applicable to dangerous instrumentalities, and the omission of the legislature to nullify that negation (in accord, I concede, with the great weight of authority, note, 16 A. L. R. 270) should prevent recovery here as matter of law, even though we dislike the result.

A day or so previously Childs and Aldrich planned the "joy ride" to Cass Lake. They contemplated no business for Aldrich's employer. Conceded is a statement by Aldrich that he had at one time some notion of calling on the more or less mythical prospect at Cass Lake. Conceded also the inconclusive presumption we could indulge had we nothing more in evidence than ownership of the car by the Denison-Harding Chevrolet Company and the fact that Aldrich was its employe. But when adversely controlling facts appear such presumptions disappear. They "are' never allowed against ascertained and established facts." Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 36, 195 N. W. 766, 767, following Lincoln v. French, 105 U. S. 614, 26 L. ed. 1189. The undisputed facts *demonstrate* that on the evening in question Aldrich never in fact attempted any business for his employer. Conclusive proof shows that the whole evening was given over to matters wholly personal to himself and Childs, with nothing to do with the business of the employer. Hence my conclusion that the record clearly puts the case outside the rule of respondeat superior.

Surely the court cannot mean to hold that a fleeting purpose of an agent hours before sustains the conclusion that at the moment of the accident he was within the scope of his employment when it is *proved* not only that the purpose was never accomplished but also that it was abandoned long before the accident for a mission wholly personal to the agent and plainly outside his employment.

Any such holding, as pertinently remarked by the Chief Justice, makes property rights hang by a very slender thread. Thereby the property of one litigant is transferred to another on the mere testimonial suggestion of a mental operation, a mere thought on the part of the loser's agent, never acted on nor attempted to be acted on. All else aside, such a holding is in plain violation of the rule, upon which our first decision was based, that an owner is not liable for negligent operation of his automobile by an employe for the latter's sole business or pleasure, even though the owner has consented to such use. I had supposed that to be as well settled here, as it is about everywhere else, by Mogle v. A. W. Scott Co. 144 Minn. 173, 174 N. W. 832, and Menton v. L. Patterson Merc. Co. 145 Minn. 310, 176 N. W. 991. Are these cases being overruled? If not, how are they distinguishable?