**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JULIE BEARDSLEY,

 Plaintiff-Appellant,

v.

FARMLAND CO-OP, INC.,

 Defendant-Appellee.

No. 06-8062

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. No. 05-CV-286-B)**

---

Terry M. Anderson (Steven M. Lathrop with him on the briefs), Hauptman, O'Brien, Wolf & Lathrop, P.C., Omaha, Nebraska, for Plaintiff-Appellant.

Gary R. Scott (Amanda M. Gundlach with him on the briefs), Hirst Applegate, P.C., Cheyenne, WY, for Defendant-Appellee.

---

Before **LUCERO, EBEL** and **HOLMES**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

On the night of December 26, 2001, Plaintiff-Appellant Julie Beardsley accompanied her husband, Brian Dick, the driver of a tanker truck owned and operated by Defendant-Appellee Farmland Co-Op, Inc. ("Farmland"). After midnight that evening, Dick lost control of the truck and it rolled over. Both Beardsley and Dick suffered severe injuries. Beardsley brought a personal injury action against Farmland, claiming that Farmland was vicariously liable for Dick's alleged negligence. The district court, sitting in diversity, concluded that Farmland was entitled to summary judgment as a matter of Wyoming law because "Wyoming employers are not liable to the unauthorized guests of their employees." Beardsley timely appealed. The dispositive issue before us is whether a reasonable jury could find that Dick had actual or apparent authority to invite Beardsley to travel with him. Because Beardsley's evidence fails to establish any basis on which a reasonable jury could decide that she was an authorized passenger, we affirm.

## I. Background

Farmland is a Colorado corporation engaged in the business of purchasing, mixing, selling, and applying dry and liquid fertilizer. Farmland operates fertilizer storage and mixing facilities in Fort Morgan and Brush, Colorado.

Julie Beardsley is a resident of Nebraska. At the time of the accident, Farmland employed Beardsley's husband, Brian Dick, as a fertilizer applicator. In addition to his duties at Farmland's Fort Morgan and Brush facilities, Dick

regularly drove a Farmland tanker truck to Cheyenne to pick up loads of liquid fertilizer from a company called Coastal Chem. Prior to the accident, Dick had made the trip over 100 times, but Beardsley had never before accompanied him. Farmland afforded Dick a great deal of flexibility in determining when to make the trips to Coastal Chem. Thus, he often made the trip at night.

On the night of December 26, 2001, Dick surprised Beardsley with a home-cooked meal to celebrate their anniversary.[1] During dinner, Dick told Beardsley that he had to make a trip that night to Cheyenne to procure a load from Coastal Chem. Beardsley importuned Dick not to go. Eventually, rather than opting not to go, Dick asked Beardsley to accompany him. They drove to Farmland's Fort Morgan facility to pick up the semi and then to the Brush facility for fuel. At neither place did they see any other Farmland employees. No Farmland employee gave Dick express permission to invite Beardsley to travel with him that night.

The ride to Cheyenne was uneventful. Dick picked up the load of liquid fertilizer after midnight. Just six miles or so from Coastal Chem, at approximately 1 a.m. on December 27, Dick lost control of the tanker truck. The truck rolled, throwing Beardsley – who was not wearing a seatbelt and was

---

[1]As part of the celebration, Dick purchased two bottles of champagne. Although the parties dispute the exact amount, they agree that Beardsley imbibed more than one bottle and brought some champagne along with her in the semi that night. However, Dick did not drink that night.

apparently asleep – from the truck.  Both Dick and Beardsley sustained extensive injuries.

At the time of the accident, Farmland operated a fleet of vehicles including approximately six pick-up trucks, a Chevrolet Suburban, a few bob-tails (semis with tanks that are mounted on and riveted to the truck's frame), and two semis. Farmland's Employee Policy Manual, in effect on the date of the accident, has a section entitled "EMPLOYEES USE OF COOPERATIVE EQUIPMENT."  In relevant part, it provides:

> 1.  All motor vehicles owned by the Cooperative are for the purpose of providing transportation in an efficient and economical manner for the Cooperative's business.  <u>At no time shall Cooperative vehicles be used for other than Cooperative business unless approved by the General Manager.</u>
> . . .
> 4.  Employees must receive permission from the General Manager of the Cooperative to use the equipment . . . of the Cooperative for their personal use.

(emphasis added).  Additionally, the policy states that the General Manager may allow an employee to "keep a Company vehicle at home."  Although Dick signed a notice acknowledging that he had received and read the manual in May 1998, he testified that he never in fact read the manual.  Additionally, certain Farmland vehicles had placards in their cabs proscribing passengers.  But the Farmland semi that Dick was driving on the night of the accident had no such placard.

In addition to Farmland's rules bearing on passengers, regulations promulgated by the Department of Transportation ("DOT") bar drivers of

commercial motor vehicles from transporting passengers without specific written authorization. See 49 C.F.R. § 392.60(a).[2]  Dick testified that he was unaware of this particular regulation, although he knew DOT regulations governed the trip that resulted in the accident.

Despite Farmland's black-letter policy, as stated in its personnel manual, Farmland employees regularly used company-owned pick-up trucks for their own personal tasks.  Farmland employees testified that company pick-up trucks were used for errands (such as going to the grocery store) and for more substantial trips (such as towing a race-car to a speedway).  Core Farmland employees had pick-ups that they considered "assigned," at least informally, to them.  Family members often rode with Farmland employees in the pick-up trucks.  Testimony in the record conflicts as to whether Brian Dick had an "assigned" pick-up which he drove home at the end of the workday.

With respect to the bob-tails and semis, however, family members rarely rode along.  Indeed, the record reveals just two instances (prior to Beardsley's

---

[2]The regulation, in relevant part, provides:
> Unless specifically authorized in writing to do so by the motor carrier under whose authority the commercial motor vehicle is being operated, no driver shall transport any person or permit any person to be transported on any commercial motor vehicle other than a bus.  When such authorization is issued, it shall state the name of the person to be transported, the points where the transportation is to begin and end, and the date upon which such authority expires.

49 C.F.R. § 392.60(a).

trip with Dick) when family members joined Farmland employees in Farmland-owned bob-tails or semis. First, just a month or so prior to the accident, Dick took his five-year-old son with him on a trip to Coastal Chem. Don Geist, Dick's superior, had called Dick the day after Thanksgiving to ask him to haul a load down from Coastal Chem. Dick explained that he was watching his son that day and could only make the trip if he brought his son along. Geist said to go ahead, even if it required bringing Dick's son.[3] Second, Dick claims that another Farmland employee, Dave Hoffman, took his children with him for at least one delivery, in either a semi or a bob-tail. Dick testified that he did not know whether or not anyone at Farmland had given Hoffman permission to do so.

In the aftermath of the accident, Beardsley brought a personal injury suit against Farmland, alleging that, under Wyoming law, the company was vicariously liable for her husband's negligent operation of the semi. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the parties are diverse and Farmland acknowledged that the amount in controversy exceeded $75,000. Having concluded that "Wyoming employers are not liable to the unauthorized guests of their employees" under Wyoming law, the district court considered Beardsley's evidence as to whether Dick had actual authority, either express or implied, to invite her to join him. The court did not address the issue

---

[3]In their depositions, both Dick and Beardsley acknowledged that Dick had thereby sought "permission" to take his son, Bryson, along with him on the trip.

of apparent authority. The court held that Dick unequivocally lacked express authority and that Beardsley's contentions did not create a triable issue as to whether Dick could have reasonably believed he had implied authority. As such, the court granted Farmland's motion for summary judgment. This court has jurisdiction to hear Beardsley's appeal under 28 U.S.C. § 1291.

**II. Discussion**

**A. Standard of Review**

"This court reviews the district court's summary judgment decision <u>de novo</u>, viewing the evidence in the light most favorable to the non-moving party . . . ." <u>Herrera v. Lufkin Indus., Inc.</u>, 474 F.3d 675, 679-80 (10th Cir. 2007). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" <u>Seegmiller v. LaVerkin City</u>, 528 F.3d 762, 766 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). The non-moving party may not "rely solely on its pleadings," to parry summary judgment, <u>Mincin v. Vail Holdings, Inc.</u>, 308 F.3d 1105, 1108 (10th Cir. 2002), but rather must "present facts such that a reasonable jury could find in [its] favor," <u>Carpenter v. Boeing Co.</u>, 456 F.3d 1183, 1192 (10th Cir. 2006).

**B. Analysis**

In light of <u>Erie Railroad v. Tomkins</u>, 304 U.S. 64 (1938), we must apply the

substantive law of the forum state, in this case, Wyoming.  <u>See</u> <u>Mincin</u>, 308 F.3d

at 1108; <u>Commerce Bank, N.A. v. Chrysler Realty Corp.</u>, 244 F.3d 777, 780 (10th

Cir. 2001).  We review <u>de novo</u> the district court's interpretation of Wyoming

law.  <u>Mincin</u>, 308 F.3d at 1108-09.  As this case hinges on whether Beardsley was

an authorized passenger in Farmland's semi, we turn to Wyoming's agency law

broadly and, more narrowly, to Wyoming's law on the liability of an employer to

the guest of an employee.

Wyoming's Supreme Court last addressed an employer's liability to a guest

of an employee in <u>Meyer v. Culley</u>, 241 P.2d 87 (Wyo. 1952).[4]  There, the Court

collected a series of legal principles from a treatise and common law cases, but

_____

[4]As the district court noted, the controlling law at the time was Wyoming's
automobile guest statute, Wyo. Stat. Ann. § 60-1201 (1945).  Wyoming's
Legislature repealed this law in 1984, <u>see</u> Wyo. Stat. Ann. Tables 740 (2007)
(noting deletion of § 31-5-1116, the contemporary iteration of the guest statute),
after the Wyoming Supreme Court held that the statute's classification of paying
and non-paying guests violated Wyoming's constitutional provision guaranteeing
"uniform operation" of the laws.  <u>See</u> <u>Nehring v. Russell</u>, 582 P.2d 67, 79-80
(Wyo. 1978).

Although the Wyoming Supreme Court, in <u>Meyer</u>, considered the Wyoming
guest statute, it did so by relying on a series of common law decisions.  <u>See</u>
<u>Meyer</u>, 241 P.2d at 96-98; <u>see also</u> <u>Civic Ass'n of Wyo. v. Ry. Motor Fuels</u>, 116
P.2d 236, 245 (Wyo. 1941) (stating that statutes are "to be construed in
connection and in harmony with the existing law" including the common law).
Accordingly, as the district court in the instant case reasoned, the repeal of
Wyoming's automobile guest statute has no bearing on the continued vitality of
the legal principles set forth in <u>Meyer</u>.

never synthesized a discrete legal rule.  See id. at 96-98 (noting only that "the following authorities would appear to be pertinent").  The Court initiated its analysis by quoting a treatise's take on the situation: "[i]f the driver, though acting duly for his master in the operation of the car is not acting for him in accepting and transporting the guest, the master cannot be held liable for his negligence in operating the car, resulting in injuries to the guest."  Id. at 96 (quoting 4 Blashfield's Cyclopedia of Automobile Law 489 (Permanent Ed. 1930)).  In the instant case, the district court held that Wyoming's Supreme Court had adopted this statement as a "general rule."

After noting the treatise's rule, the Wyoming Court continued on to cite approvingly a series of cases from other jurisdictions.  Broadly read, these cases support the treatise rule.  Yet, the cited cases encompass nuances on the narrow issue at stake here: whether an employee ever has implied or apparent authority to invite others to ride with him.  Compare Liggett & Myers Tobacco Co. v. De Parcq, 66 F.2d 678, 685 (8th Cir. 1933) (no such authority as a matter of law), with White v. Brainerd Serv. Motor Co., 232 N.W. 626, 627 (Minn. 1930) (quoting Dearborn v. Fuller, 107 A. 607, 608 (N.H. 1919) (leaving open possibility that, "[i]f there had been testimony from which a finding of authority conferred could reasonably have been made, the case would have been for the jury")).  Accordingly, Wyoming's substantive law on the topic is not as clear as the district court suggested.

Perhaps recognizing this infirmity, the district court braced its adoption of the Meyer "rule" – the treatise language quoted above – by comparing it to "the majority rule as stated by the Restatement (Second) of Agency." Specifically, the Restatement provides:

> A master is not subject to liability for the conduct of a servant towards a person harmed as a result of accepting . . . from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment.

Restatement (Second) Agency § 242 (1958).

The Restatement's language regarding whether an invitation is binding on the master equates to Meyer's statement about a servant "not acting for [the master] in accepting and transporting the guest . . . ." See Meyer, 241 P.2d at 96. That is, both the Restatement and the Meyer rule distinguish the situation where the servant is, on a broader level, still acting within the scope of his employment and for his employer's benefit, but has impermissibly invited a guest along for the ride. The principle discernible from the two formulations is that the employer's vicarious liability for the employee's negligence depends on whether the employee's invitation to the guest is authorized, and hence, binding on the employer.

As such, the dispositive question here is whether Dick was acting for Farmland in accepting and transporting Beardsley as a guest. If he was not, Farmland may not be held liable to Beardsley. This question requires an

- 10 -

assessment of whether Dick had actual authority, express or implied, from Farmland to invite Beardsley on the trip.  See Meyer, 241 P.2d at 96-98 (citing La Bell v. Quasdorf, 177 A. 77, 77 (N.J. 1935) (considering evidence regarding agent-driver's authority to invite passenger); White, 232 N.W. at 627-28 (same)). Additionally, this court must consider whether Farmland had cloaked Dick with the apparent authority to ask Beardsley to accompany him. See Meyer, 241 P.2d at 97-98; Shannon v. Pac. Rail Servs., L.L.C., 70 F. Supp. 2d 1243, 1248 (D. Kan. 1999) (applying Restatement (Second) of Agency § 242 and considering whether agent-driver had apparent authority to invite a passenger along with him)).  But see Reis v. Mosebach, 12 A.2d 37, 39 (Pa. 1940) (Passengers "so invited or permitted to ride [by employee driver] should know of this obvious lack of authority from the position the man holds and the character of his employment." (emphasis omitted)); Home Stores, Inc. v. Parker, 166 S.W.2d 619, 621 (Tenn. 1942); Liggett & Myers Tobacco Co., 66 F.2d at 685.

Under Wyoming law, "the scope of the agent's authority [is] a question[] of fact to be determined by the jury."  Cargill, Inc. v. Mountain Cement Co., 891 P.2d 57, 62 (Wyo. 1995).  However, "[i]f evidence is not presented creating a question of fact, then determinations are made as a matter of law."  Hamilton v. Natrona County Educ. Ass'n, 901 P.2d 381, 386 (Wyo. 1995).  Accordingly, to affirm, we must conclude that Beardsley offered no evidence that could persuade a reasonable jury that Dick had authority to invite her along.  For the reasons

stated below, we agree with the district court that Beardsley has raised no triable issues of fact.

## 1. Express Authority

An employee, under Wyoming law, "has express actual authority to bind" his employer when that employer has "orally or in writing, specifically grant[ed] the [employee] the power to bind the [employer]." Cargill, 891 P.2d at 62.

Here, Dick neither sought nor received permission to take Beardsley on the trip to Coastal Chem. This essentially ends our inquiry. While Farmland's employee manual is arguably ambiguous as to whether Dick's action was acceptable, Beardsley cannot credibly contend that it expressly conferred authority on Dick to invite her along.[5] See Shannon, 70 F. Supp. 2d at 1249 ("Even assuming that Pacific Rail's 'no riders' policy was not specifically communicated to Mr. Vogel, there is nothing in the evidentiary record to suggest

---

[5]In their briefing, the parties spilled a great deal of ink bickering over the effect of Farmland's Employee Manual and how its terms should be interpreted. The relevant provision of the Manual states: "At no time shall Cooperative vehicles be used for other than Cooperative business unless approved by the General Manager." Although this provision does not explicitly proscribe Dick's action – because he was still using the vehicle for Farmland business – it does imply that employees should seek the General Manager's approval for all borderline uses. Regardless, this language unequivocally did not expressly authorize Farmland employees to take family members on business trips, as Beardsley argues. As it was Beardsley's burden to proffer some evidence of express authorization, she cannot succeed on this theory: nothing in the record suggests that Farmland had ever given Dick express authorization to take guests with him in the semi's cab.

that this failure . . . could have been interpreted as devolving upon Mr. Vogel the authority to offer rides . . . .").  Thus, Beardsley has not presented sufficient facts from which a reasonable jury could find that Farmland expressly authorized Dick to invite his family members to travel with him on business trips.

### 2. Implied Authority

Under Wyoming law, an employee has "[i]mplied actual authority" where the "course of dealings between the parties and the circumstances surrounding the case" establish the employee's power to bind the employer.  Cargill, 891 P.2d at 62.  An employee, of course, cannot create his own authority.  Rather, he must reasonably believe he has authority based on his employer's conduct, customs, or their joint course of dealing.  See Ulen v. Knecttle, 58 P.2d 446, 450-51 (Wyo. 1936); see also Restatement (Third) Agency § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.").  An employer's "[a]cquiescence in a series of acts is evidence of authority for the future only when the acts are of a like nature."  Ulen, 58 P.2d at 455.  Thus, we ask whether it was reasonable for Dick to assume that he had authority, deriving from his past dealings with and duties for Farmland, to invite Beardsley to accompany him.

Beardsley argues that Dick believed he had authority to invite her with him. Specifically, Beardsley contends that Dick interpreted the permission he had been given to take his son along with him on a prior trip "as broad authority to take passengers along if necessary to secure the liquid fertilizer from the Coastal Chem plant" on time. Beardsley also offers as evidence the customary use of Farmland pick-ups by Farmland employees and their families and Farmland's lack of an explicit written policy proscribing non-employee passengers. Moreover, Beardsley notes, certain Farmland vehicles included placards indicating that no passengers were permitted, whereas the semi Dick drove on the night of the accident had no such placard. Finally, Beardsley suggests that Dick based his decision to invite Beardsley to ride with him on his understanding that another employee, Dave Hoffman, had taken his children with him on at least one trip.

Even viewing this evidence in the light most favorable to Beardsley, we do not think a rational jury could find that Dick reasonably believed he could invite Beardsley along with him. As the district court noted, Dick felt compelled to seek permission to bring his son along with him on a prior trip. Dick apparently admitted as much during his deposition:

> Q. In regard to the trip where you took [your son] Bryson with you in the semi, did you believe it was necessary to get the okay to take [him] with you?
> A. [Brian Dick] That's why I told Don that that would be the only way that I could go.
> . . .
> Q. Okay, did you get permission from Mr. Geist?

- 14 -

A. I was told to do whatever I had to do to get them loads in.
Q. No, listen to my question, did Mr. Geist give you permission to take [your son] with you?
A. Yes, yes he did give me permission to take [him].

Moreover, Farmland had granted its express permission for that deviation from the rules because Dick could not make the trip to Coastal Chem without his son – he would have had to leave his son home alone. No such exigency existed when Dick invited Beardsley along.[6] It follows, then, that taking Beardsley along was not a necessary incident to Dick's driving duties for Farmland. Cf. Serman v. Unigard Mut. Ins. Co., 504 F.2d 33, 35 (10th Cir. 1974) ("The implied and incidental authority of an agent . . . should be deemed to include only such powers as are practically indispensable and essential in order to carry out the duties actually delegated to the agent.").

Moreover, the customary use of the Farmland pick-ups does not permit a reasonable inference that Farmland employees could invite family members along on trips in the Farmland semis. See Ulen, 58 P.2d 455 (requiring sufficient similarity between past acts that employer acquiesced to and future acts that employee claims were impliedly authorized by the prior acquiescence). First, the

---

[6]Dick testified that, "[n]o, I didn't need to watch Julie like in the Bryson [his son] situation . . . it was just the fact of working hundreds of hours that you don't see your wife and it is kind of nice to be able to see her other than one day at Christmas time." While we are sympathetic to Dick's sentiment, his situation that night did not necessitate bringing Beardsley along, unlike the prior situation with his son.

- 15 -

Employee Policy Manual notes that the General Manager may permit employees to take a company vehicle home with them. Farmland's General Manager had apparently given his permission to those employees who used the pick-ups, or had at least countenanced the practice. Tellingly, however, the record offers no indication that the General Manager had ever authorized use of the bob-tails or semis in such a way. While Dick regularly had family members ride with him in Farmland pick-ups, he had never invited Beardsley to ride with him in the semi, though he had made the trip to Coastal Chem over 100 times. See Reisch v. M & D Terminals, Inc., 884 P.2d 242, 246-47 (Ariz. Ct. App. 1994) (holding, in nearly identical factual situation, that no genuine factual dispute existed despite employee's testimony that he had seen his boss carrying passenger in company truck in violation of company policy).

Second, there is an obvious reason why the General Manager would not give such permission. As the district court asserted, "pick-up trucks are fundamentally different from tanker trucks . . . because pick-up trucks are generally designed for both personal and commercial use . . . ." Employees do not typically hop in a semi to head home from work. Indeed, Dick had to drive to Farmland's facility to pick up the semi each time he embarked on a trip to Coastal Chem. Moreover, other Farmland employees testified that Farmland's policy – with respect to the bob-tails and semis – prohibited passengers, unless the driver obtained the general manager's permission. Accordingly, Dick could not

- 16 -

reasonably interpret Farmland's acquiescence regarding its employees use of the company pick-ups as evidence that he had authority to invite Beardsley to ride with him.  See Ulen, 58 P.2d at 455; see also Klatt v. Commonwealth Edison Co., 211 N.E.2d 720, 728, 729 (Ill. 1965) (applying Restatement § 242 rule in holding, as a matter of law, that employer could not be held liable where "company rule . . . in force at the time of the accident in substance provides that unauthorized persons unconnected with company business are not to be transported in company vehicles" (emphasis added)).

The semi's lack of a precatory placard does not alter this analysis.  Dick did not testify that this fact altered his understanding of Farmland's policy; to the contrary, he testified that he understood he needed to secure permission before bringing his son along on the prior trip.  And Beardsley offered no evidence as to which vehicles contained the placards.  The natural implication is that the placard in the truck Dick drove was misplaced, rather than that Farmland had consciously decided to place the placards in some vehicles and not other vehicles of the same type.  Based on the testimony of Dick's co-workers and the readily apparent differences between pick-up and tanker trucks, the absence of a placard does not suffice to confer implied authority to invite passengers into the cab.

Lastly, Dick's contention that Dave Hoffman had invited a passenger along in a bob-tail or semi on at least one trip is not sufficient to create a material issue of fact.  Dick admitted that he did not know whether Hoffman had sought and

- 17 -

received permission for this trip. Hoffman could very well have sought and obtained permission, just as Dick had when Dick brought his son along with him. See Reisch, 884 P.2d at 247 (Because "[t]he record does not indicate whether the passenger in [the boss's] truck was indeed unauthorized, and nothing in the record suggests that it was accepted custom at [the employer] for its drivers to carry unauthorized passengers," one alleged instance of violation of no passengers rule did not mandate submission of case to jury.) For purposes of our summary judgment analysis, even if Hoffman did not have permission, it would be the only instance in Dick's eight-plus years at Farmland that an employee drove with an unauthorized passenger in a bob-tail or semi. Such an aberration cannot amount to a reasonable basis for Dick to believe he had the requisite authority.

As such, Dick could not reasonably have inferred that he had the authority to invite Beardsley to accompany him. The district court, therefore, rightly held that Beardsley cannot reach a jury on this theory.

### 3. Apparent Authority

Under Wyoming law, "[a]pparent authority is created when the principal holds the agent out as possessing the authority to bind the principal or when the principal allows the agent to claim such authority." Cargill, 891 P.2d at 62. This theory derives from the principle of estoppel; as such, the plaintiff must prove that (1) the employer "'was responsible for the appearance of authority in the agent to conduct the transaction in question,'" and (2) that the plaintiff

- 18 -

"reasonably relied" on the agent's ostensible authority. Id. (quoting Herbert

Constr. Co. v. Continental Ins. Co., 931 F.2d 989, 993-94 (2nd Cir.1991)); Kure

v. Chevrolet Motor Div., 581 P.2d 603, 609 (Wyo. 1978).

Meyer approvingly cites case-law holding that an employee's mere

possession or operation of the employer's vehicle cannot support a third party's

inference that the employee has authority to offer a ride to that third party. See

Meyer, 241 P.2d at 97-98. As such, without more, "the driving of a vehicle in the

scope of employment . . . does not create apparent authority to invite persons to

ride . . . ." See Restatement (Second) Agency § 242 cmt. b; Hall v. Atchison,

Topeka & Santa Fe Ry. Co., 349 F. Supp. 326, 329 (D. Kan. 1972) (applying

Kansas law).

The district court's opinion did not expressly address the apparent authority

issue and, if it was raised in the district court, by implication it was rejected.[7]

Nothing in the evidence adduced by Beardsley persuades us that the court erred in

doing so.

---

[7]It is not clear that this issue was squarely raised by Beardsley in the district court proceedings. Although Beardsley employs the term "apparent authority" in her memorandum in opposition to Farmland's motion for summary judgment, the context of the argument suggests that counsel conflated "implied authority" with "apparent authority." Regardless, as explained above, Beardsley has offered no evidence from which a reasonable juror could conclude that Farmland cloaked Dick with the apparent authority to invite Beardsley to ride with him.

To stave off summary judgment, Beardsley must show that Farmland intimated in some way that Dick had the authority to invite her along with him on the trip and that she reasonably relied on his ostensible authority. Even if Beardsley had demonstrated that Farmland "was responsible for the appearance of authority in the agent [Dick]," see Cargill, 891 P.2d at 62, Beardsley cannot satisfy the second prong of the apparent authority analysis.

Beardsley alleges that Farmland permitted its employees to use company pick-ups in a way that led her to believe Dick could offer her a ride in the semi. As discussed above, this argument is unavailing. There is a noticeable difference between a pick-up truck and a tanker truck. The pick-up may reasonably be viewed as a company car. No one would view a semi as such. Indeed, Beardsley's deposition testimony indicates an awareness of the distinction, that implies that she did not rely at all on Farmland's acquiescence to its employees' personal use of the pick-ups. When asked what knowledge she had "about non-employees driving with Farmland employees in Farmland vehicles," Beardsley replied: "Well, I had known that, like the wives went with their husbands, you know, in the pickups and stuff, but as far as the truck, Brian drove trucks."

Even assuming Beardsley did rely on the pick-up evidence, two other facts foreclose Beardsley's argument because they undercut the reasonableness of her reliance. First, she had never traveled with Dick in the semi before and second, she knew that he had asked permission to bring their son with him on the prior

occasion. She knew Dick had not sought Farmland's permission on that evening – as Beardsley recognized Dick was compelled to do when their son rode with him. Thus, no reasonable jury could find that Farmland had cloaked Dick with the authority to invite passengers to travel with him.

### III. Conclusion

Under Wyoming law, an employer is not liable for injuries suffered by the unauthorized guest of an employee. Because no reasonable juror could find that Dick's invitation to Beardsley was binding on Farmland, no triable issue exists.[8] As such, we AFFIRM the district court's grant of summary judgment to Farmland.

---

[8]This result is not inconsistent with Meyer. There, William Meyer, an employee of Rental Service Company ("RSC"), invited Bernice Culley into a car owned by RSC. He crashed the car and she sued Meyer and RSC for her personal injuries. See Meyer, 241 P.2d at 88. The jury returned a verdict for Culley, and the defendants moved for a new trial. The trial court granted RSC a new trial, but denied Meyer's motion. Id. at 89. Culley appealed from the court's decision to grant RSC a new trial, and Meyer from the decision rejecting his motion for a new trial. Id.

On appeal, the Wyoming Supreme Court remanded for a new trial for RSC, despite its application of the rule on vicarious liability we have invoked herein. It apparently did so, not because the plaintiff had raised triable issues, but because the relevant issue on appeal was whether the district court erred in granting a new trial to RSC. Thus, even though RSC may have been entitled to a directed verdict, the issue before the court was whether RSC was entitled to a new trial. As such, the court never expressly contemplated the possibility of a directed verdict, holding merely that "the trial court did not err in awarding a new trial to [RSC], the owner of the vehicle in the case at bar." Id. at 98.