# CHARLESTON.

EVELYN M. COLLAR, *Administratrix, etc. v.* JAMES E. McMULLIN *et als.*

(No. 6481)

Submitted May 15, 1929.     Decided May 28, 1929.

442

*Richardson & Kemper,* for plaintiff in error.
*Sanders, Crockett, Fox & Sanders,* for defendant in error.

MAXWELL, JUDGE:

James E. McMullin, one of three defendants, prosecutes this writ of error to a judgment of the circuit court of Mercer county in favor of Evelyn M. Collar, administratrix of Roland H. Collar, deceased, for $8,000.00 for the alleged wrongful death of her intestate. The Bluefield Grocery Company and R. Lacy Croy, the two other defendants, were exonerated from liability, and are not before the Court on this writ of error.

The suit was an outcome of an automobile accident. On June 18, 1928, McMullin, a salesman for the Bluefield Grocery Company, was returning from Bland County, Virginia, where he had been in the course of his employment. He was driving a Dodge coupe owned by his employer and was accompanied by Roland H. Collar, a Boy Scout executive, who had asked his permission to make the trip in pursuance of his Scout duties. McMullin was approaching Bluefield from the south on Bland Road which is a highway extending into the city and being known as Washington Street after passing within the city limits. Intersecting this road at the city line and almost at right angles with said road is the Fincastle and Cumberland Gap Turnpike. To the east of Bland Road, the turnpike is hard surfaced; to the west, at the time of the accident, there were cinders scattered along the north portion of the drive. The intersection itself is level but the Bland Road approach to it is uphill; the turnpike approach from the west is slightly down grade. At the southwest angle caused by this junction the vegetation was high preventing a view of either road from the other at the time the accident occurred.

At the moment McMullin entered this intersection from the Bland Road, defendant, R. Lacy Croy, driving a Ford coupe eastward, entered it from the turnpike on the west. A collision occurred which resulted in the McMullin car being overturned. Collar's right-hand was injured, and he was taken to a hospital where he remained ten days and was discharged. The next day, feeling not so well, he returned. It was discovered he had developed tetanus; serum was administered which induced convulsions from which he died in fifteen or twenty minutes. It is not seriously questioned that the injury was the proximate cause of his death.

The proceedings in the trial court developed for the most part into a contest between Croy and McMullin as to the party responsible for Collar's injuries. The liability of the Bluefield Grocery Company was subordinate to the main issue. Upon its motion, at the conclusion of the evidence, the court directed a verdict in its favor. The court overruled a similar motion on the part of Croy. The jury ex-

onerated Croy, but found for the plaintiff against McMullin and fixed the damages as above stated.

McMullin's numerous assignments of error will be presently considered. The plaintiff asserts that Croy and McMullin were joint tort feasors; that McMullin was guilty of negligence as a matter of law, and that therefore errors, if any, committed by the trial court, were harmless.

Let us consider the testimony in the light of these viewpoints. Croy's version of the mishap is, in part, as follows: that he was on the right side of the turnpike approaching the intersection at the rate of ten or fifteen miles per hour, slowing up in the expectation of meeting someone on the Bland Road; that he blew his horn; that he saw McMullin twenty feet away coming up (north) on the left side of Bland Road at a rate of thirty-five miles per hour; and then seeing the McMullin car was coming right into him he stopped with his front wheels two feet over the western line of Bland Road; that McMullin struck his car about the hub cap of the left wheel, and then swerved to the right, and went against the curb on Washington Street, and turned over. Taken as a whole, his testimony is not satisfactory, presumably due either to a misunderstanding of the questions asked him or to his inability to grasp their import. As specific examples of the confusion which seemed to exist in his mind, we quote: (Direct examination) "Q. I will ask you to state whether or not as you approached that intersection your view was obstructed to the right? A. Yes, sir. Q. What obstructed that view, Mr. Croy, what obstructed your view to the right? A. I always drive to the right. Q. My question was could you see the East River Mountain road to your right as you approached that intersection? A. Yes, sir. Q. Was your view obstructed in any way looking towards the mountain as you drove toward that road? A. Yes, sir, I could see it." Cross examination by McMullin's counsel. "Q. You knew that upon approaching an intersection a man coming on your right had the right of way, did you not? Objection, overruled, exception. A. I don't think he did. By the court. Q. How was that? A. I didn't think he did have the right of way. He was on the left. * * * By McMullin's counsel.

Q. On this occasion when you approached this intersection, you thought you had the right of way? A. Yes, sir.'' As regards driving to the right-hand side of the turnpike which Croy had testified to in his direct examination, he was asked by McMullin's counsel: ''Q. You have spoken about this Fincastle Turnpike on which you were driving. How wide is that road according to your recollection—not according to what the map shows? A. It's about twenty feet wide, what is used. * * * Q. Is there some more of it you could use? A. Yes, sir, but it is not fixed as good as what's twenty feet wide. * * * Q. As a matter of fact, that cinder portion of this road is to the north or city side of the center of that road, isn't it? A. It's on—it's on the north—it's on the left kind of coming up Cumberland Pike. Q. And that's the part of the road you were driving on at the time of the accident occurred? A. Yes, sir, I was to the right-hand side where it had the cinders on.'' The inexactness of this testimony is apparent. We are presented with no concrete picture of Croy's position either before or after the impact. Finally he definitely states that his estimate of McMullin's speed was a conclusion based on the distance McMullin went before turning over after the collision.

Let us examine the testimony of McMullin. He says he was driving north on the Bland Road about the center of the road; that he entered the intersection at about twenty to twenty-five miles per hour, having first blown his horn; that he saw Croy coming to his left about fifteen feet away, going fully twenty miles an hour; that he (McMullin) accelerated his car in an effort to avoid a collision and swerved to his right, but Croy instead of going straight across the intersection, as he was headed, turned to his left and followed him (McMullin); that the frame or spring of Croy's car hit his rear left wheel and the fender and knocked the Dodge over against the right curb on Washington Street; that the rear right wheel struck the curb; that the collision occurred in the intersection about four feet north of the south line of the paved section of the Cumberland Pike.

It may be seen that the testimony of Croy and McMullin is hopelessly in conflict. There seems no doubt that McMullin

was not driving to his right. Croy says McMullin's right wheels were four feet to the left of the center of the road; McMullin claims he was straddling the center line, and that the road was straight and free from traffic. Croy expresses the opinion that had McMullin been where he belonged the impact would not have occurred; McMullin counters with the statement that had Croy kept straight ahead in the direction he was originally going instead of turning to the left, there would have been no impact.

The testimony of witnesses who arrived at the scene of the accident after its occurrence, with reference to the tracks on the road, the marks on the cars, and the comparative distances travelled is given in much detail. It is as conflicting as the testimony of the principals, and will serve no useful purpose in being repeated here. From it all we are led to the conclusion that McMullin's negligence is not established as a matter of law. Therefore, the errors assigned cannot on that ground be held to be harmless. If McMullin's negligence even in the slightest degree was a contributing factor to the accident, it was proper to submit the case to the jury as was done, but such submission must have been under correct instructions; and the trial throughout must have been conducted without prejudice to McMullin. His assignments of error must therefore be considered.

He complains of the refusal of the trial court to permit the jury to be taken to the scene of the accident, and likewise the court's refusal to allow the jury to see the McMullin car which was parked near the courthouse at the time of the trial. Such matters are peculiarly within the discretion of the trial court, and unless the denial of such request works probable injury to the moving party, the ruling of the court will not be disturbed. *Gunn* v. *Ohio R. Co.*, 36 W. Va. 165. Four pictures of the scene of the accident introduced by plaintiff as exhibits without objection convey an adequate impression of the *locus in quo* of the accident. As to the marks on McMullin's car, it was too long after the accident for competent examination to be made. It appears, too, that certain repairs had been made to the car.

As to the map or blue print prepared by engineer Barton and duly authenticated by him, McMullin complains that the locations of the cars as portrayed thereon at the instance of Croy are self-serving declarations intended to favor Croy's contention, and that a map with the alleged positions of the automobiles pictured thereon should not have been admitted in evidence at all. The force of this complaint is materially lessened when it is considered that it was made plain to the jury that the location of the cars thereon was at the direction of Croy, and that Barton definitely disclaimed any knowledge of the correctness of such location. Moreover, McMullin himself used the map to give his version of the accident indicating on it the positions of the cars as he understood the situation. Under such circumstances there appears no error.

McMullin assigns error based upon the testimony of Barton, the engineer above referred to, as to whether the place of the accident was urban or suburban territory. The purpose of this was to afford basis for the testimony that McMullin was exceeding the speed limit at the time of the accident. As to whether certain territory is urban or suburban is not a matter for expert opinion. The jury was as competent as the witness to form an opinion on that subject. The objection should have been sustained.

Plaintiff's witness, W. J. Peters, was asked, and over McMullin's objection permitted to answer, the following question: ''Assuming that it had been hit on the hub cap of the right-hand wheel and right-hand fender, what direction would that have turned the Croy car?'' A. ''Now, then, a car coming up here and hitting the car here, which showed it had been done at this point here, it showed something had hit this car, and it skidded that wheel and turned that car in a northern direction.'' This answer should have been excluded when objected to by McMullin's counsel because it purports to tell the jury how the cars struck,—a matter about which the witness had no knowledge. It does not matter that it was asked by Croy's counsel. It was as prejudicial to McMullin as though it had been asked by plaintiff's counsel.

The exclusion by the court of evidence offered by McMullin as to what would have happened had Croy not turned into

Washington Street does not constitute error. It was speculative evidence. Also, McMullin's testimony of what he expected and intended at the time of the accident was likewise properly excluded.

Now as to the instructions. Instruction No. 4, prepared by the court, follows: "The court instructs the jury that under Barnes Code of West Virginia 1923, section 95, page 762, under the heading 'Public Highways', the law in regard to the speed limit of vehicles is as follows: vehicles designed for carrying not more than seven passengers, on suburban streets, twenty miles per hour; and on urban streets, fifteen miles per hour." This instruction is erroneous in its statement of the law. By the Acts of the Legislature 1925, chapter 17, section 95, the maximum speed on suburban streets is twenty-five miles per hour. The error is obvious.

Instruction No. 2, given at instance of defendant Croy, is as follows: "The court further instructs the jury that if you believe from the evidence in this case that the defendant, Croy, drove his car up to the left-hand side of the intersection referred to in the evidence and while on the left-hand side thereof was struck by a car driven by the defendant, McMullin, then you are told that the defendant, Croy, had a right to be where he was at such time, and if you believe from all the evidence that he was not guilty of any negligent act which contributed to the injury, he is in no wise responsible for such collision and your verdict should be for the defendant, Croy." It is submitted by McMullin that this instruction erroneously invaded the province of the jury; that they alone had the right to say whether under all the facts and circumstances of the case Croy was where he had a right to be at the time of the accident. This objection is sound. It was for the jury to say whether the Croy car was where it should have been at the time of impact. What does the expression "left-hand side of intersection mean?" If "intersection" as here used means the center point of the intersecting streets, then we think the instruction was plainly wrong in telling the jury in effect that Croy had the right to drive his car to a position to the left of such point and be

absolved from liability for an ensuing collision with a car approaching from the right.

McMullin's instruction No. 3, refused, reads: "The court instructs the jury that under the law of the State of West Virginia an operator of a vehicle is entitled to have the right of way over an operator of another vehicle who is approaching from the left in an intersecting highway, and is required to give the right of way to an operator a vehicle approaching from the right of an intersecting highway, and that if they believe from the evidence in this case that the defendant McMullin was approaching an intersecting highway on the right of the defendant Croy, then the defendant McMullin had the right of way over said intersection; and if the jury should believe that the defendant, Croy, failed to yield such right of way, but proceeded into the intersection and thereby caused the collision between his automobile and that operated by McMullin, and that such collision was the proximate cause of the injury to the plaintiff's decedent; then the jury shall find for the defendant, McMullin, unless the jury should further believe from the evidence in this case that the defendant, McMullin, was guilty of some other act of negligence which caused or proximately contributed to the said injury." This instruction correctly states the law, and the substance thereof not having been covered by any other instruction, it ought to have been given to the jury. Its refusal was prejudicial error.

McMullin's instruction No. 7, refused: "The court instructs the jury that negligence as spoken of in the court's instructions means the failure to use such care and caution as a reasonably prudent man would ordinarily have used in the conduct of his own affairs under the circumstances shown in the evidence." This definition of negligence seems to be proper. The party offering it was entitled to have it go to the jury in explanation of the instructions given which embodied that expression.

McMullin's instruction No. 14, refused: "The court further instructs the jury that the plaintiff's decedent having accepted the hospitality of the defendant, McMullin, and riding with him as a guest without payment is not entitled

to hold the said defendant to the duty of exercising that high degree of care which the law imposes on carriers of passengers, but had the right to require only that the said defendant use reasonable care in operating his automobile; and if the jury believe from all the evidence that the defendant, McMullin, did use in the operation of his car such care as an ordinary prudent person would have exercised under the circumstances; they should find for the defendant, McMullin." This instruction is correct; it went to the very heart of the case. McMullin was entitled to have the jury informed as to the extent of the care which devolved upon him.

As to both three and fourteen a further reason why McMullin was entitled to have them given to the jury lies in the fact that propositions therein set forth were presented to the jury in abstract form in plaintiff's instructions Nos. 5 and 6. McMullin had the right to have these propositions applied to the facts which his evidence tended to support. Randall's Instructions to Juries, sec. 118.

For the errors aforesaid, we reverse the judgment, set aside the verdict and remand the case.

*Reversed and remanded.*